1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VANESSA SALCEDO,                    ) Case No. EDCV 14-1668-JPR
                                    )
                 Plaintiff,         )
                                    )
          vs.                       ) MEMORANDUM OPINION AND ORDER
                                    ) AFFIRMING COMMISSIONER
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security,                           )
                                    )
                 Defendant.         )
_____       )

**I.    PROCEEDINGS**

        Plaintiff seeks review of the Commissioner's final decision
denying her application for supplemental security income ("SSI").
The parties consented to the jurisdiction of the undersigned U.S.
Magistrate Judge under 28 U.S.C. § 636(c).  The matter is before
the Court on the parties' Joint Stipulation, filed June 5, 2015,
which the Court has taken under submission without oral argument.
For the reasons stated below, the Commissioner's decision is
affirmed and judgment is entered in her favor.

1    **II.   BACKGROUND**

2         Plaintiff was born in 1982.  (Administrative Record ("AR")

3    218.)  She completed at least the eighth grade and worked as a

4    landscape laborer and security guard.[1]  (AR 39, 85-87.)

5         On June 9, 2008, Plaintiff filed an application for SSI.

6    (AR 95-96, 101, 218.)  She alleged that she had been unable to

7    work since June 3, 2008, because of "[s]chizophrenia and

8    bipolar."  (AR 218, 257.)  After her application was denied, she

9    requested a hearing before an Administrative Law Judge.  (AR

10   139.)  A hearing was held on September 21, 2010, at which

11   Plaintiff, who was represented by counsel, testified, as did a

12   vocational expert ("VE").  (AR 30-62.)  In a written decision

13   issued October 6, 2010, the ALJ found that Plaintiff was disabled

14   by her depression from June 9, 2008, through October 15, 2009,

15   but that on October 16, medical improvement occurred and she

16   became able to work.  (AR 101-09.)

17        On February 24, 2012, the Appeals Council granted

18   Plaintiff's request for review.  (AR 115-22.)  After noting that

19   it "may consider the entire decision if the claimant file[s] an

20   appeal, including the part with which the claimant agree[s]," the

21

22        [1]  At the first hearing, Plaintiff testified that her "last

23   grade learning" was eighth grade, although she didn't "actually
     drop[] out" until 11th grade.  (AR 34.)  At the second hearing,

24   she testified that the last grade she completed was eighth grade.
     (AR 70.)  Plaintiff reported to several health-care providers

25   that she completed 11th or 12th grade, however.  (See, e.g., AR
     640, 677, 730.)  In any event, the Administrative Law Judge who

26   decided this case apparently accepted Plaintiff's claim that she

27   had only an eighth-grade education.  (See AR 89 (posing
     hypothetical to vocational expert that assumed individual with

28   eighth-grade education).)

                                    2

1  council determined that the ALJ had erred by failing to make
2  sufficient findings to support her conclusion that Plaintiff had
3  been disabled from June 2008 to October 2009, among others
4  things.  (AR 115-16.)  The council therefore vacated the hearing
5  decision and remanded to the ALJ to take certain enumerated
6  actions.  (AR 115-17.)

7      On October 16, 2012, a second hearing was held before a
8  different ALJ; Plaintiff, who was still represented by counsel,
9  testified, as did a VE.  (AR 63-91.)  On February 1, 2013, the
10 ALJ found that Plaintiff had not been disabled at any time since
11 June 9, 2008.  (AR 10-24.)  On June 27, 2014, the Appeals Council
12 denied Plaintiff's request for review.  (AR 1-3.)  This action
13 followed.

14 **III. STANDARD OF REVIEW**

15     Under 42 U.S.C. § 405(g), a district court may review the
16 Commissioner's decision to deny benefits.  The ALJ's findings and
17 decision should be upheld if they are free of legal error and
18 supported by substantial evidence based on the record as a whole.
19 See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra
20 v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial
21 evidence means such evidence as a reasonable person might accept
22 as adequate to support a conclusion.  Richardson, 402 U.S. at
23 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).
24 It is more than a scintilla but less than a preponderance.
25 Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.
26 Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether
27 substantial evidence supports a finding, the reviewing court
28 "must review the administrative record as a whole, weighing both

the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV. THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled. 20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 416.920(a)(4)(ii). If the claimant has a "severe"

impairment or combination of impairments, the third step requires the Commissioner to determine whether it meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, she is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date.  (AR 12.)  At step two, she concluded that Plaintiff had severe impairments of depressive disorder and "history of polysubstance abuse."  (AR 13.)  She found that Plaintiff's asthma had "no more than a minimal effect on her ability to work" and was therefore not severe (<u>id.</u>), a finding Plaintiff does not challenge (<u>see generally</u> J. Stip.).  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing.  (<u>Id.</u>)

At step four, the ALJ found that Plaintiff retained the capacity to perform a "full range of work at all exertional levels" but with the following nonexertional limitations:

> she is precluded from concentrated exposure to pulmonary irritants such as dust, fumes, gasses, and odors; she can sustain concentration and attention, persistence and pace in at least two hour blocks of time; she can understand, remember, and carry out simple instructions; she can interact appropriately with coworkers and supervisors; due to a low tolerance for stress, she is precluded from performing fast-paced production or assembly line work, such as work involving a conveyor belt; and she can have casual, non-intense, contact with the general public.

(AR 14.)  Based on the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as a landscape laborer.  (AR 23.)  The ALJ therefore found Plaintiff not disabled.  (AR 23-24.)

**V.    DISCUSSION**

Plaintiff contends that the ALJ erred in failing to (1) fully and fairly develop the record "in compliance with the Appeals Council remand order" and (2) elicit from the VE an explanation for her conclusion that Plaintiff could perform her past relevant work as a landscape laborer, which was allegedly inconsistent with the DOT.  (J. Stip. at 3.)

A.    <u>Compliance with Appeals Council Remand Order</u>

Plaintiff contends that the ALJ failed to "fully and fairly develop the record" because the "Appeals Council remand order indicated that the ALJ was to obtain evidence from a medical expert,[3] if available, to clarify the nature and severity of [Plaintiff's] impairments," but "there is no evidence that a medical expert was obtained to testify."  (<u>Id.</u>)  She argues that her file contains a "large amount of mental health medical records that would benefit from a medical expert reviewing and assisting in determining the nature and severity" of her impairments and that "[i]t would not have been that difficult for the ALJ to request a medical expert."  (<u>Id.</u> at 4.)

1.    <u>Relevant facts</u>

In its February 2012 remand order, the Appeals Council vacated the October 2010 hearing decision and remanded to the ALJ

---

[3]  "MEs are physicians, mental health professionals, and other medical professionals who provide impartial expert opinion at the hearing level on claims under title II and title XVI of the Social Security Act."  Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-5-32 (Medical Experts – General) (last updated Aug. 29, 2014), http://ssa.gov/OP_Home/hallex/I-02/I-2-5-32.html.  They "provide opinions by either testifying at a hearing or responding to written interrogatories" and may be used before, during, or after a hearing.  <u>Id.</u>

to (1) "[c]larify the period at issue beginning with the claimant's alleged onset date and address whether the final determinations of any prior applications are subject to reopening under the regulations, or an extension of the deadline for filing an appeal"; (2) "[u]pdate the evidence of record and, if warranted and available, obtain additional evidence concerning the claimant's impairments," which "may include a consultative mental status examination with psychological testing and medical source statements about what the claimant can still do despite the impairments"; (3) "[o]btain evidence from a medical expert, if available, to clarify the nature and severity of the claimant's impairments"; (4) if necessary, "conduct the further proceedings required to determine whether drug addiction is a contributing factor material to the finding of disability"; (5) "[f]urther evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 416.920a"; (6) "[g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations"; (7) "[e]valuate the claimant's subjective complaints and third party statements and provide rationale in accordance with the disability regulations pertaining to the evaluation of symptoms"; and (8) "obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base" if such testimony was "warranted by the expanded record." (AR 116-17.)

On remand, a different ALJ obtained updated medical records

(AR 890-941) and, in October 2012, conducted a second hearing (AR 63-91).  Plaintiff and a VE, but not a medical expert, testified at the hearing.  (<u>Id.</u>)  After the hearing, the ALJ solicited a psychological evaluation, which was conducted by psychologist Margaret Donohue, Ph.D., on November 24, 2012.  (AR 942-50.)  On December 19, 2012, the ALJ provided Plaintiff a copy of the psychological report and advised her that she may "submit any or all of the following: written comments concerning the enclosed evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, . . . any additional records you wish me to consider (including a report from the treating physician)," or "written questions to be sent to" Dr. Donohue.  (AR 215.)  The ALJ further advised Plaintiff that she could "request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law."  (<u>Id.</u>)  The ALJ stated that she would grant any request for a supplemental hearing "unless [she] receive[s] additional records that support a fully favorable decision." (<u>Id.</u>)  She advised Plaintiff that if she did not "receive a response from you within 10 days of the date you receive this notice," she would "assume that you do not wish to submit any written statements or records and that you do not wish to request a supplemental hearing or to orally question" Dr. Donohue.  (AR 216.)

Plaintiff did not respond to the letter (AR 10), and on February 1, 2013, the ALJ issued her unfavorable decision (AR 10-24).  On June 27, 2014, the Appeals Council denied Plaintiff's

1  request for review.[4]  (AR 1-3.)

2          2.   Discussion

3      Plaintiff argues that reversal is warranted because the ALJ

4  failed to comply with the portion of the Appeals Council's order

5  directing her to "[o]btain evidence from a medical expert, if

6  available, to clarify the nature and severity of [Plaintiff's]

7  impairments."  (AR 116; see J. Stip. at 3-5.)  Plaintiff's

8  argument fails for several reasons.

9      As an initial matter, the Court likely lacks jurisdiction to

10 reverse the ALJ's decision based on her failure to comply with an

11 Appeals Council remand order.  In an analogous unpublished

12 decision, Tyler v. Astrue, 305 F. App'x 331 (9th Cir. 2008), the

13 Ninth Circuit found that the district court "properly declined to

14 evaluate whether the ALJ's second decision satisfied the demands

15 of the Appeals Council's remand" because

16     federal courts only have jurisdiction to review the final

17     decisions of administrative agencies.   See 42 U.S.C.

18     § 405(g).  When the Appeals Council denied review of the

19     ALJ's  second  decision,  it  made  that  decision  final,

20     Ramirez v. Shalala, 8 F.3d 1449, 1451 (9th Cir. 1993),

21     and declined to find that the ALJ had not complied with

22     its remand instructions.

23 Id. at 332.  Here, the Appeals Council found "no reason under our

24 rules" to review the second ALJ's decision, which made it "the

25 final decision of the Commissioner of Social Security in

26 ─────────────

27     [4]  Plaintiff's only argument in support of her request for
   review was that she "disagree[d] with the decision and
28 request[ed] that the Appeals Council Review the exhibit file and
   audiocassette tape of the hearing."  (AR 6.)

10

1    [Plaintiff's] case."  (AR 1.)  Under the reasoning set forth in

2    Tyler and several subsequent district-court opinions, this

3    Court's review is therefore limited to assessing whether

4    substantial evidence supports the second ALJ decision, not

5    whether the ALJ complied with the previous remand order.  See

6    Conlee v. Colvin, 31 F. Supp. 3d 1165, 1175 (E.D. Wash. 2014)

7    (finding that "[t]here is authority in this Circuit, including

8    [Tyler], to the effect that the Appeals Council's denial of a

9    second request for review deprives the District Court of

10   jurisdiction to review any failure by the ALJ to follow a prior

11   Remand Order" and collecting cases); see also Boyd v. Astrue, No.

12   ED CV 11-493-PJW, 2012 WL 4495627, at *1-2 (C.D. Cal. Sept. 27,

13   2012) (finding based in part on Tyler that "the issue of whether

14   the ALJ followed the Appeals Council's remand order is not

15   properly before the Court"); Million v. Astrue, No. EDCV 09-1435

16   AGR, 2011 WL 1156631, at *2 (C.D. Cal. Mar. 29, 2011) (declining

17   to evaluate whether ALJ complied with Appeals Council's remand

18   order because under Tyler and other authority, "[f]ederal courts

19   have jurisdiction to review only the final decision of the

20   Commissioner").

21        But even assuming, as some authority suggests, that the

22   Court does have jurisdiction to assess whether the ALJ complied

23   with the Appeals Council's remand order, reversal on this basis

24   is not warranted.  See §§ 416.1477(b), 404.977(b) ("The

25   administrative law judge shall take any action that is ordered by

26   the Appeals Council and may take any additional action that is

27   not inconsistent with the Appeals Council's remand order.");

28   Widman v. Astrue, 302 F. App'x 744, 746 (9th Cir. 2008) (finding

that ALJ "properly complied with an Appeals Council remand order," thereby "discharging [his] duty to 'take any action that is ordered by the Appeals Council'" (quoting § 404.977(b)); Pavlich v. Colvin, No. CV 13-01829-MAN, 2014 WL 4449897, at *5 (C.D. Cal. Sept. 10, 2014) (noting that "an ALJ who either fails to take an action ordered by the Appeals Council or takes an action that is 'inconsistent with' the Appeals Council's remand order commits legal error" (quoting § 404.977(b))).  First, it is not clear whether the ALJ failed to abide by the remand order: the council directed the ALJ to obtain testimony from a medical expert only if one was "available" (AR 116), and nothing indicates that such an expert was available during the proceedings in this case.[5]

Second, even accepting Plaintiff's argument that the ALJ improperly ignored the Appeals Council's directive to obtain medical-expert testimony (J. Stip. at 3-5), reversal is not warranted because substantial evidence supports the ALJ's finding that Plaintiff was not disabled.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes are harmless); Facen v. Colvin, No. C 12-4648 LB, 2013 WL 4516121, at *17 (N.D. Cal. Aug. 23, 2013) ("an ALJ's

---

[5] Dr. Donohue rendered an opinion regarding Plaintiff's conditions and was available for questioning, but she apparently cannot be considered a medical expert in this case because she examined Plaintiff.  See Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-5-32 (Medical Experts – General) (last updated Aug. 29, 2014), http://ssa.gov/OP_Home/hallex/I-02/ I-2-5-32.html ("An ALJ may not . . . [u]se an ME who has treated the claimant in the past or who has examined the claimant on a consultative basis.").

'failure to adhere strictly' to an Appeals Council's remand order can constitute a harmless error when substantial evidence supports the ALJ's decision" (citation omitted)); <u>Robinson v. Astrue</u>, No. EDCV 12-00685 AJW, 2013 WL 396174, at *2 (C.D. Cal. Feb. 1, 2013) ("Irrespective of whether the ALJ complied with the Appeals Council's remand order, the issue before the Court in this action for judicial review is whether the ALJ's decision is based on substantial evidence and is free of legal error."); <u>cf. Strauss v. Comm'r of Soc. Sec. Admin.</u>, 635 F.3d 1135, 1138 (9th Cir. 2011) (finding that district court abused its discretion by remanding for payment of benefits based on ALJ's failure to comply with court's and Appeals Council's remand orders because "the court may not move from that conclusion directly to an order requiring the payment of benefits without the intermediate step of analyzing whether, in fact, the claimant is disabled").

As an initial matter, Plaintiff fails to point to anything allegedly erroneous about the ALJ's evaluation of the nature and severity of her impairments.  Indeed, the ALJ fully assessed the medical evidence (AR 16-23) and accorded "significant weight" to the opinions of state-agency medical consultants B. Smith and R. Paxton, who both specialized in psychiatry (AR 399-14, 519-20);[6] "some weight" to the opinion of examining psychiatrist Romualdo R. Rodriguez (AR 391-97); "less weight" to the opinion of examining psychologist Donohue (AR 942-50); and "little weight"

---

[6] Drs. Smith's and Paxton's electronic signatures include a medical specialty code of 37, indicating psychiatry.  (AR 399, 520); <u>see</u> Program Operations Manual System (POMS) DI 24501.004, U.S. Soc. Sec. Admin. (May 5, 2015), http://policy.ssa.gov/poms.nsf/lnx/0424501004.

to the opinion of treating psychiatrist Aryanpur (AR 487).[7]

(See AR 22-23); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

2002) ("The opinions of non-treating or non-examining physicians

may also serve as substantial evidence when the opinions are

consistent with independent clinical findings or other evidence

in the record.").   The ALJ reasonably found that Plaintiff's

psychological condition improved with medication (AR 17, 20)[8] but

---

[7]   Among other things, the ALJ noted that Dr. Aryanpur opined in October 2008 that Plaintiff was unable to "sustain gainful employment at present" but "may be able to work in the future" (AR 22, 487); in fact, by November 2008, he noted that she was "stable" and "feeling better," and he referred her for employment assistance (AR 22, 498).

[8]   See, e.g., AR 868 (Aug. 2008, doctor noting that Plaintiff was "doing fairly well" with medication and had "no sig. mood problems"; medication adherence was "good"), 760 (Feb. 2010, doctor noting that Plaintiff reported "doing good" and "voices no complaints"; medication adherence was "good"), 759 (Mar. 2010, doctor noting that Plaintiff "continues to do well" with "no complaints"; medication adherence was "good" and doctor encouraged Plaintiff to contact "DOR," presumably Department of Rehabilitation), 750 (July 2010, doctor noting that Plaintiff was "doing well, and voicing no complaints"; medication compliance was "good"), 749 (Aug. 2010, doctor noting that Plaintiff reported "doing good"; medication compliance was "good"), 919 (Mar. 2011, doctor noting that Plaintiff was "feeling good"; medication adherence was "good"), 917 (May 2011, doctor noting that Plaintiff was "doing well, and voicing no symptoms and no complaints"; medication adherence was "good"), 914 (Aug. 2011, doctor noting that Plaintiff was "doing good" and "feeling happier"; medication adherence was "good"), 906 (Oct. 2011, doctor noting that Plaintiff was "good," "no symptoms and no complaints," "eats and sleeps well, and keeps active"; medication adherence was good and doctor referred her to "DOR"), 903 (Nov. 2011, doctor noting that Plaintiff "reports occasional anxiety, otherwise doing well and keeping active.  No depression.  States 'the medicine relaxes me.'"), 901 (Dec. 2011, doctor nothing that Plaintiff "continues to do well and voicing no complaints, keeps active"; medication adherence was "good"), 899 (Feb. 2012, doctor noting that Plaintiff reported doing "pretty good" but had difficulty sleeping; medication adherence was "good" and doctor

14

that she "frequently failed to attend her therapy sessions" or take her medication (AR 16).[9]  The ALJ further noted that Plaintiff engaged in "numerous activities of daily living" (AR 23; see also AR 15); and indeed, Plaintiff stated that she went grocery shopping with friends (AR 75); cleaned the yard (AR 283); prepared simple meals (AR 75, 283); helped her mother with housework, including mopping, sweeping, and vacuuming (AR 51,

_____

prescribed additional medication for insomnia), 897 (Mar. 2012, doctor noting that Plaintiff was "ok" and had no complaints; medication adherence was "good"), 896 (Apr. 2012, doctor noting Plaintiff's report that "everything is good"; she was "voicing no complaints" but forgot to take medication two or three days a week), 894 (June 2012, doctor noting that Plaintiff was "doing well, and voicing no complaints" but forgot to take medication two days a week).

[9]   See, e.g., AR 825 (Feb. 2008, social worker noting "no show for psych eval"), 872 (July 2008, social worker noting "no show for scheduled individual session"), 867 (Sept. 2008, doctor noting that Plaintiff was "off Zoloft 1 mo." and "not taking Seroquel consistently either"), 854 (Oct. 2008, doctor noting that Plaintiff had been "off meds x 2 mos."), 848 (Oct. 2008, doctor noting that Plaintiff was "noncompliant" with medications), 846 (Nov. 2008, doctor noting that Plaintiff was "noncompliant" with Prozac), 791 (Apr. 2009, doctor noting that Plaintiff "depressed, tearful" and "not taking meds consistently"), 631 (May 2009, not taking medications), 643 (undated note stating "off meds – 3 weeks"), 761 (Jan. 2010, doctor noting that Plaintiff "ran out" of medication "2-3 wks ago"), 757 (Apr. 2010, doctor noting that Plaintiff "ran out of Zoloft 10 days ago"), 754 (May 2010, doctor noting that Plaintiff "not compliant" with Zoloft but "insists" on receiving it "because she doesn't want to jeopardize her SSI application"), 924 (Dec. 2010, doctor noting that Plaintiff had taken "no meds past 3 wks"), 921 (Feb. 2011, doctor noting that Plaintiff complained of hypersomnia and occasional depression and ran out of medication "4 days ago"), 918 (Apr. 2011, doctor noting that Plaintiff was doing "okay" but sleeping until afternoon; she "ran out" of medication "a week ago"), 916 (July 2011, doctor noting that Plaintiff "reports recent anxiety" and had not taken Zoloft "for almost 3 wks").)

15

78); sometimes did laundry (id.); drew pictures for more than an

hour at a time (AR 52, 77-78); rode her bike for an hour or two

at a time (AR 53, 76-77); helped care for her three-year-old

nephew (AR 53-54); used the internet on her phone (AR 77); went

to the movies with friends (AR 78); watched five or six hours of

television a day (id.); and attended church and Alcoholics

Anonymous meetings (AR 78-79).  The ALJ also noted that by

January 2010, Plaintiff's psychiatrist had recommended that she

apply for jobs and undergo vocational rehabilitation.  (AR 16;

see AR 761 (Jan. 2010, doctor noting that he "encouraged"

Plaintiff to "look[] for jobs" and connect with vocational

rehabilitation); see also AR 759 (Mar. 2010, doctor noting that

Plaintiff was "not looking for jobs because she is awaiting Court

hearing on her 3rd SSI denial"), 751 (June 2010, doctor noting

that Plaintiff had "no incentive to work or connect [with] voc

rehab").)[10]  Plaintiff does not argue that the ALJ's assessment

of the evidence was in any way erroneous (see J. Stip. at 3-5),

_____

      [10]   The record also reflects Plaintiff's frequent use of
alcohol and illegal drugs.  (See, e.g., AR 772 (Aug. 2009, doctor
noting that Plaintiff consumed alcohol, methamphetamine, and
marijuana "last week"), 761 (Jan. 2010, doctor noting that
Plaintiff's last use of alcohol was "4 days ago," and she used
methamphetamine "3x/wk" and marijuana daily), 759 (Mar. 2010,
doctor noting that Plaintiff "last abused meth, marijuana and
beer yesterday"), 933 (Nov. 2010, doctor noting that Plaintiff
last used alcohol three weeks earlier, last used methamphetamine
three or four weeks earlier, and last used marijuana three months
earlier), 68-69 (Plaintiff's Oct. 2012 testimony regarding use of
marijuana and methamphetamine in July and Aug. 2012 and recent
use of alcohol); but see AR 943 (Plaintiff's report to Dr.
Donohue in Nov. 2012 that she last used methamphetamine "two to
three years ago").)  The ALJ nevertheless found that Plaintiff's
history of "polysubstance dependence" was "not material" to her
disability determination.  (AR 23.)

nor does she respond to the Commissioner's argument that the ALJ's failure to solicit evidence from a medical expert was harmless (id. at 9 (Commissioner's argument), 10 (Plaintiff stating in reply only that she "reiterates her initial contentions").)  Because the ALJ fully discussed and assessed the evidence, which supported her nondisability finding, any error in failing to solicit a medical-expert opinion was harmless.

Plaintiff also argues that in failing to "obtain a medical expert," the ALJ "failed to assure that Plaintiff's interests were fully and fairly considered and that the record was fully and fairly developed."  (Id. at 5.)  It is true that an ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.").  But it nonetheless remains Plaintiff's burden to produce evidence in support of her disability claims.  See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (as amended). Moreover, the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2010) (as amended May 19, 2011) (citation omitted); accord Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

Here, Plaintiff does not point to any particular ambiguity in the record that a medical expert would have clarified;

17

instead, she asserts that the case "consists of a large amount of mental health records that would benefit from a medical expert reviewing and assisting in determining the nature and severity of [her] impairments." (J. Stip. at 3-4.) Such a general assertion fails to show that the evidence was ambiguous or the record inadequate. That is particularly true given that on remand, the ALJ obtained additional treatment records (AR 890-941), held a second hearing (AR 63-91), and solicited a psychological evaluation (AR 942-50). Moreover, Plaintiff was given an opportunity to submit additional evidence or request a supplemental hearing — which the ALJ said she would grant unless she "receive[d] additional records that support a fully favorable decision" — but Plaintiff did not elect to do so. (AR 10, 215-16); cf. Tonapetyan, 242 F.3d at 1150 (ALJ may discharge duty to develop "in several ways, including . . . continuing the hearing[] or keeping the record open after the hearing to allow supplementation of the record"). Indeed, Plaintiff apparently never argued, to the ALJ or the Appeals Council, that medical-expert testimony was necessary for proper consideration of her case. Cf. Solorzano v. Astrue, No. ED CV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) ("Counsel are not supposed to be potted plants at administrative hearings . . . [t]hey have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed"). As such, the ALJ did not violate her duty to develop the record.

Remand is not warranted on this ground.

B.   <u>Plaintiff's Ability to Perform Landscape-Laborer Job</u>

Plaintiff argues that the ALJ erred in determining that she could perform her past relevant work as a landscape laborer "because this job requires demands that are in excess of the Plaintiff's RFC," which precluded her from "concentrated exposure to pulmonary irritants such as dust, fumes, gasses, and odors." (J. Stip. at 13.)

1.   <u>Applicable law</u>

At step four of the five-step disability analysis, a claimant has the burden of proving that she cannot return to her past relevant work, either as actually or generally performed in the national economy. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001); § 416.920(f).  Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make factual findings to support her conclusion. <u>Pinto</u>, 249 F.3d at 844.  The ALJ can meet this burden by comparing the physical and mental demands of the past relevant work with the claimant's actual RFC. <u>Id.</u> at 844-45.

To ascertain the requirements of occupations as generally performed in the national economy, the ALJ may rely on VE testimony or information from the Dictionary of Occupational Titles ("DOT"), including its "companion publication," the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). <u>Id.</u> at 845-46; SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (at steps four and five, SSA relies "primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy" and "may also use VEs . . . at

these steps to resolve complex vocational issues"); SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982) ("The [DOT] descriptions can be relied upon — for jobs that are listed in the DOT — to define the job as it is *usually* performed in the national economy." (emphasis in original)).

When a VE provides evidence about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the DOT. See SSR 00-4p, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that application of SSR 00-4p is mandatory). When such a conflict exists, the ALJ may accept VE testimony that contradicts the DOT only if the record contains "persuasive evidence to support the deviation." Pinto, 249 F.3d at 846 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); see also Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (finding error when "ALJ did not identify what aspect of the VE's experience warranted deviation from the DOT"). "A VE's recognized expertise provides the necessary foundation for his or her testimony," and "no additional foundation is required." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

## 2. Relevant background

At the October 2012 hearing, the VE testified that Plaintiff's past relevant work was properly classified as "landscape laborer," DOT 408.687-014, which was "medium" work.[11] (AR 88-89.) The ALJ asked the VE whether a hypothetical

---

[11] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." § 416.967(c).

individual with Plaintiff's RFC, including the requirement that she "avoid concentrated exposure to pulmonary irritants such as dust, fumes, gases and odors," would be able to perform the landscape-laborer job. (AR 89-90.) The VE answered, "Yes." (AR 90.) Plaintiff's counsel declined to question the VE regarding her testimony. (AR 91.)

In her February 2013 decision, the ALJ found that Plaintiff had the severe impairments of major depressive disorder and history of polysubstance abuse. (AR 13.) She found that Plaintiff's "medically determinable impairment of asthma causes only a slight abnormality that would have no more than a minimal effect on her ability to work" (id.), noting that she "continued smoking cigarettes and marijuana, despite her asthma," and that her condition was controlled with medication (AR 13, 16). The ALJ nevertheless included in Plaintiff's RFC a preclusion from "concentrated exposure to pulmonary irritants such as dust, fumes, gasses, and odors." (AR 13, 14.) The ALJ noted that the VE testified that a person with Plaintiff's RFC could perform the landscape-laborer job, found that the VE's testimony was "consistent with the DOT," and concluded that Plaintiff was not disabled. (AR 23-24.)

### 3. Discussion

The DOT defines the landscape-laborer job as follows:

Digs holes for plants and trees, using pick and shovel. Mixes fertilizer or lime with dirt in bottom of holes to enrich soil, places plants or trees in holes, and adds dirt to fill holes. Attaches wires from planted trees to stakes to support trees. Hauls or spreads topsoil, using

> wheelbarrow and rake.  Waters lawns, trees, and plants,
> using portable sprinkler system, hose, or watering can.
> Spreads straw over seeded soil to prevent movement of
> seed and soil.  Builds forms for concrete borders, using
> lumber, hammer, and nails. Mixes and pours cement for
> garden borders.  Places decorative stones and plants
> flowers in garden areas.  Mows lawns, using power mower.

DOT 408.687-014, 1991 WL 673364.

Plaintiff argues that she is "unable to meet the work requirements" of the landscape-laborer job because she is precluded from "concentrated exposure to pulmonary irritants such as dust, fumes, gasses, and odors." (J. Stip. at 10-11.) Specifically, she argues that the landscape-laborer job

> would require [P]laintiff to be outside . . . where one
> is consistently exposed to dust and gasses in the air as
> well as pollution.  An individual would also dig holes,
> fill in holes, and spread dirt and straw around which
> produces a significant amount of dust.  An individual
> would also mix and pour cement which produces dust as
> well.  An individual would be exposed to gasses
> consistently with the lawn mower and other landscaping
> tool [sic] that require gas to run including a weedwacker
> and leaf blower.  An individual would also be planting
> trees and flowers which contain a significant amount of
> pollen, which can be considered a pulmonary irritant.

(Id. at 12.)  Plaintiff argues that the VE's testimony that she could perform the job therefore conflicted with the DOT's job description, and because "[n]either the ALJ nor the VE

1 articulated reasons for deviating from the DOT," reversal is

2 warranted.  (<u>Id.</u> at 12-13.)

3     Plaintiff's argument fails because the DOT's description of

4 the landscape-laborer job does not reflect any limitations that

5 are inconsistent with her RFC.  As an initial matter, it is

6 unlikely that the minor exposure to normal air pollution, dust,

7 pollen, or fumes described by Plaintiff would constitute

8 "concentrated" exposure to pulmonary irritants, or that it would

9 in fact exacerbate her asthma, which the ALJ found was

10 "nonsevere" (AR 13) – a finding Plaintiff has not challenged.

11 Indeed, Plaintiff never testified that she had any pulmonary or

12 other physical problems while performing her past relevant work

13 as a landscape laborer.  (<u>Compare</u> AR 38 (Plaintiff's testimony

14 that she had allergies when working briefly at warehouse) <u>with</u> AR

15 38-39 (Plaintiff's testimony that she performed landscape-laborer

16 job "okay").)  In any event, however, the DOT explicitly states

17 that "atmospheric conditions" are "[n]ot [p]resent" in the

18 landscape-laborer job, DOT 408.687-014, 1991 WL 673364, and the

19 DOT's companion publication, the SCO, defines "atmospheric

20 conditions" as "[e]xposure to such conditions as fumes, noxious

21 odors, dusts, mists, gases, and poor ventilation, that affect the

22 respiratory system, eyes, or the skin."  U.S. Dep't of Labor,

23 Emp't & Training Admin., Selected Characteristics of Occupations

24 Defined in the Revised Dictionary of Occupational Titles, app. D

25 (1993).  As such, the VE's testimony that Plaintiff could perform

26

27

28

the landscape-laborer job was in fact consistent with the DOT.[12]
See Massachi, 486 F.3d at 1154 n.20 (noting that ALJ's
"procedural error" in failing to ask VE whether testimony
conflicted with DOT was harmless when no conflict existed).
Reversal is not warranted on this ground.

**VI.   CONCLUSION**

Consistent with the foregoing, and under sentence four of 42
U.S.C. § 405(g),[13] IT IS ORDERED that judgment be entered
AFFIRMING the decision of the Commissioner and dismissing this
action with prejudice.   IT IS FURTHER ORDERED that the Clerk
serve copies of this Order and the Judgment on counsel for both
parties.


DATED: September 18, 2015        _____
                                 JEAN ROSENBLUTH
                                 U.S. Magistrate Judge


---

[12] Plaintiff notes, in a single sentence, that "the VE
indicated that the landscape laborer job was performed at the
medium exertion level per the DOT; however, the DOT indicates
that it is performed at the heavy exertional level."  (J. Stip.
13.)  It is true that the DOT states that the landscape-laborer
job is "[h]eavy [w]ork," involving exerting 50 to 100 pounds of
force frequently or 10 to 20 pounds of force constantly.  DOT
408.687-014, 1991 WL 673364.  But any error in this portion of
the VE's testimony was harmless because the ALJ found that
Plaintiff had the RFC to perform "the full range of work at all
exertional levels."  (AR 14); see Stout, 454 F.3d at 1055.

[13] That sentence provides: "The [district] court shall have
power to enter, upon the pleadings and transcript of the record,
a judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."